Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| STEPHANIE CRISTINA RODRÍGUEZ ORTIZ<br><br>Apelada<br><br>v.<br><br>EDDIE SAMIR RODRÍGUEZ BERRÍOS, DOMINGO BERRÍOS, VICTORIA BERRÍOS<br><br>Apelantes | TA2025AP00516 | APELANTE Procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm.: GM2023RF00385<br><br>Sobre: Alimentos entre parientes (Ascendientes, descendientes, cónyuges) |

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 13 de enero de 2026.

Comparece ante nos Eddie Samir Rodríguez Berríos ("señor Rodríguez Berríos" o "Apelante"), mediante escrito intitulado *Certiorari* presentado el 31 de octubre de 2025. Nos solicita la revocación de la *Sentencia Parcial* dictada y notificada el 5 de septiembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Guayama ("foro primario" o "tribunal *a quo*"). Por virtud del aludido dictamen, el foro primario declaró parcialmente *Ha Lugar* la moción de sentencia sumaria presentada por la señora Stephanie Cristina Rodríguez Ortiz ("señora Rodríguez Ortiz" o "Apelada").

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen apelado.

### I.

El 12 de diciembre de 2025, la señora Rodríguez Ortiz presentó *Demanda* sobre partición de herencia y pensión alimentaria contra el señor Rodríguez Berríos y sus padres, el señor

Domingo Rodríguez y la señora Victoria Berríos.[1] Mediante esta, sostuvo que era la única hija procreada en el matrimonio entre el Apelante y la señora Yessenia Ortiz Acosta ("señora Ortiz Acosta"). Adujo que el señor Rodríguez Berríos cumplía una condena de por vida en Estados Unidos por ocasionar la muerte de la señora Ortiz Acosta. Explicó que, previo a estos hechos, el 19 de febrero de 1999, el vínculo matrimonial entre la señora Ortiz Acosta y el señor Rodríguez Berríos había sido disuelto mediante sentencia de divorcio. Arguyó que, como parte de las estipulaciones que formaron parte de la referida sentencia, al Apelante se le fijó una pensión alimentaria de trescientos dólares ($300.00) mensuales, a favor de la señora Rodríguez Ortiz. Asimismo, sostuvo que, según la estipulación presentada junto a la acción de divorcio, se estableció la forma en que se dispondría de los bienes gananciales. Entre tales acuerdos, se dispuso que la señora Ortiz Acosta otorgaría una escritura pública a los fines de ceder sus derechos sobre un inmueble, sito en el Municipio de Guayama, al señor Rodríguez Berríos. En detalle, la referida estipulación disponía lo siguiente:

> La peticionaria retendrá el auto marca Hundai *sic*, modelo 1995 y continuará pagando las mensualidades. El padre peticionario retendrá la casa y el mobiliario del hogar y continuará pagando la hipoteca. La peticionaria firmará la escritura de cesión de derechos sobre la casa a favor del peticionario una vez se decrete el divorcio.[2]

No obstante lo anterior, la Apelada alegó que el señor Rodríguez Berríos no había realizado ningún pago por concepto de pensión alimentaria. Asimismo, manifestó que la escritura antes mencionada no pudo otorgarse, "pues en el lapso de tiempo entre la firma del acuerdo y la fecha de la desaparición de la Sra. Ortiz

---

[1] Véase, Entrada 1 del expediente del caso GM2023RF00385 en el Sistema Unificado de Manejo y Administración de Casos del foro primario (SUMAC TPI). Advertimos que la causa de acción contra el señor Domingo Rodríguez y la señora Victoria Berríos fue desestimada por el foro primario mediante *Sentencia Parcial* emitida el 6 de septiembre de 2024, notificada el día 9 del mismo mes y año. *Véase*, SUMAC TPI, Entrada 46.
[2] *Véase*, SUMAC TPI, Entrada 1, Anejo 2, pág. 1.

Acosta, el demandado Rodríguez Berríos desarrolló un patrón de acecho e intimidación que lo impidió."[3]

Por todo lo anterior, la Apelada reclamó; (1) una partida de dieciocho mil dólares ($18,000.00) por concepto de pensión alimentaria, por los últimos sesenta (60) meses; (2) la cantidad de ochenta mil dólares ($80,000.00) del valor del inmueble, por ser la única heredera de su madre y, (3) una suma de cincuenta y tres mil dólares ($53,000.00) por concepto de los cánones de arrendamiento que había estado devengando el Apelante con respecto a la propiedad en cuestión.

En respuesta, el 21 de mayo de 2024, el Apelante presentó *Contestación a Demanda.*[4] Esencialmente, por virtud de este escrito, negó algunas de las alegaciones contenidas en la demanda y aceptó otras. Entre estas, reconoció que había incumplido con su obligación alimentaria. Asimismo, aceptó la estipulación sobre la escritura de cesión. Sin embargo, entre sus defensas afirmativas, adujo que no habían llevado a cabo los procedimientos "requeridos por ley para el trámite hereditario y de divisiones de bines *sic* que se pretende",[5] y que la Apelada contaba con bienes suficientes para sustentarse a sí misma.

Tras múltiples trámites procesales, cuyo tracto no amerita pormenorización, el 12 de junio de 2025, la señora Rodríguez Ortiz presentó *Solicitud de Sentencia Sumaria.*[6] En esencia, solicitó que se impusiera el pago de dieciocho mil dólares ($18,000.00) por concepto de deuda de pensión alimentaria, y que se reconociera "la subsistencia de la comunidad de bienes post ganancial".[7] Asimismo, suplicó que se ordenara la liquidación de la comunidad de bienes.

---

[3] *Véase*, SUMAC TPI, Entrada 1, pág. 2.
[4] Véase, SUMAC TPI, Entrada 26.
[5] *Íd.*, pág. 2.
[6] Véase, SUMAC TPI, Entrada 65.
[7] *Íd.*, pág. 5.

Vale destacar que, junto a su solicitud, la Apelada presentó varios documentos en apoyo, entre ellos, la sentencia de divorcio que disolvió el matrimonio entre el Apelante y la señora Ortiz Acosta;[8] la estipulación que formó parte de dicha sentencia;[9] una declaratoria de herederos donde se le reconoció como única y universal heredera de la señora Ortiz Acosta[10] y, un contrato de arrendamiento relacionado a la propiedad en controversia.[11]

El 12 de junio de 2025, notificada al próximo día, el foro primario emitió *Resolución* en la cual concedió un término de veinte (20) días al Apelante para exponer su posición en cuanto a la moción dispositiva.[12] Posteriormente, el 7 de junio de 2025, el señor Rodríguez Berríos instó *Moción en Solicitud de Término*, a través de cual solicitó un término adicional de treinta (30) días para presentar su oposición.[13] Ante ello, el 8 de julio de 2025, el tribunal *a quo* concedió el término solicitado.[14]

Así las cosas, el 6 de agosto de 2025, presentó *Moción en Oposición a que se dicte Sentencia Sumaria a favor de la Demandante.*[15] En síntesis, esbozó que sí existían hechos materiales en controversia. Detalló que, a pesar de que la señora Rodríguez Ortiz era heredera de su madre, la sentencia de divorcio disponía que los bienes habían sido liquidados y la propiedad le había sido adjudicada. En esa dirección, indicó que "[n]ada tiene que ver si en efecto se hizo o no la escritura de cesión, el único titular de la propiedad inmueble es el señor Rodríguez Berríos."[16]

Sobre lo mismo, indicó que, según lo resuelto por el tribunal *a quo* mediante la *Sentencia Parcial* que desestimó el pleito contra

---

[8] *Íd.*, Anejo 2.
[9] *Íd.*, Anejo 3.
[10] *Íd.*, Anejo 8.
[11] *Íd.*, Anejo 9.
[12] Véase, SUMAC TPI, Entrada 66.
[13] Véase, SUMAC TPI, Entrada 67.
[14] Véase, SUMAC TPI, Entrada 68.
[15] Véase, SUMAC TPI, Entrada 69.
[16] *Íd.*, pág. 5.

sus padres,[17] él era el titular de la propiedad aun cuando no se hubiese llevado a cabo la cesión. A esos efectos, alegó que la controversia ya había sido adjudicada, por lo que no había nada que disponer sobre la petición de la Apelada en cuanto a que se reconociera la existencia de una comunidad de bienes sobre el inmueble. Asimismo, indicó que no procedía la liquidación reclamada.

Ante ese cuadro, el señor Rodríguez Berríos arguyó que el único asunto pendiente era si procedía el pago reclamado por concepto de pensión alimentaria. Sin embargo, sostuvo que la señora Rodríguez Ortiz debió haber presentado dicho reclamo en el caso de divorcio, donde fue establecida la pensión, y no a través de un pleito civil independiente.

Considerados los argumentos de las partes, el 5 de septiembre de 2025, el foro primario dictó *Sentencia Parcial*.[18] Por virtud de esta, formuló las siguientes determinaciones de hechos incontrovertidos:

(1) Stephanie Cristina Rodríguez Ortiz, es hija de Eddie Samir Rodríguez Berríos y Yesenia Ort[i]z Acosta. Sus padres se divorciaron, dictándose Sentencia el 19 de febrero de 1999. La misma fue final y firme el 21 de marzo de 1999.

(2) Al Sr. Eddie Samir Rodríguez Berríos se le fijó la obligación de alimentos a favor de su hija, por la suma de $300.00 mensuales, obligación que admite haber incumplido, acumulando una deuda de $18,000.00, correspondiente a cinco (5) años;

(3) Stephanie Cristina Rodríguez Ort[i]z, nació el 25 de marzo de 1998, por lo que llegó a la mayoría de edad el 25 de marzo de 2019.

(4) El 28 de febrero de 2020, Stephanie Cristina Rodríguez Ort[i]z presentó una acción por daños y alimentos, la que fue desestimada sin perjuicio el 28 de febrero de 2022. Dicha acción interrumpió el término prescriptivo dispuesto por el *Código Civil de 1930 y el vigente (Arts. 1866 y 675*, respectivamente, 31 L.P.R.A. 5296 y 7571).

(5) La Petición de Divorcio por Consentimiento Mutuo suscrita por los padres de la demandante incluyó una Estipulación incorporada en la Sentencia. Se dispuso que la co-peticionaria, Yesenia Ort[i]z

---

[17] V*éase*, SUMAC TPI, Entrada 46.
[18] Véase, SUMAC TPI, Entrada 71.

Acosta, firmaría la escritura cediendo su derecho sobre el inmueble adquirido durante su matrimonio, una vez se decretara el mismo.

(6) Eddie Samir Rodríguez Berríos fue convicto por ocasionar la muerte de Yesenia Ort[i]z Acosta, en hechos ocurridos el 15 de abril de 1999, veinticinco (25) días después que la Sentencia fuese ejecutable, sin haberse otorgado la escritura.

(7) El divorcio conlleva la ruptura completa del vínculo matrimonial y la separación de propiedad y bienes entre los cónyuges, *Código Civil de 1930, Art. 105, 31 L.P.R.A. 381*. Dicha ruptura origina una comunidad de bienes sobre todos los activos del haber antes ganancial en la que cada partícipe posee una cuota individual, así como derecho a pedir su división, *Montalván v. Rodríguez, 161 D.P.R. 411*.

(8) El demandado, Eddie Samir Rodríguez Berríos, está impedido, por sus actos, de exigir el cumplimiento del otorgamiento de la escritura mediante la cual su víctima cedería sus intereses en la propiedad de la Sociedad de Gananciales disuelta, *Código Civil, Art. 7, 31 L.P.R.A. 7; General Electric v. Concrete Building, 104 D.P.R. 871*.

(9) Stephanie Cristina Rodríguez Ort[i]z, es la única heredera de Yesenia Ort[i]z Acosta. Como tal, le corresponde el derecho a exigir la división de la comunidad post-ganancial, así como de todos los bienes que ella genera, *Arts. 105 y 289 del Código Civil de 1930, 31 L.P.R.A. 381; 31 L.P.R.A. 111*. La participación de la demandante y del demandado en la comunidad es 50% para cada uno.

(10) La propiedad perteneciente a la extinta Sociedad de Gananciales Rodríguez Ort[i]z, fue arrendada en diciembre de 2010, fijándose un canon de $500.00 mensuales. Dicho canon estuvo vigente hasta diciembre de 2016, cuando se redujo a $450.00.

(11) El producto de los cánones se ha destinado al pago de la hipoteca que grava la propiedad, arreglos en ésta y gastos personales del Sr. Rodríguez Berríos en prisión.

(12) El *Artículo 289 del Código Civil de 1930, 31 L.P.R.A. 411*, ampara el derecho de la demandante a disfrutar de los frutos que produzca la cosa, por lo que le corresponde a la demandante una participación igual a 50% de éstos.

(13) La parte que solicita la Sentencia Sumaria tiene la obligación de demostrar que no hay controversia real en cuanto a ningún hecho material y que procede dictarse Sentencia a su favor como cuestión de derecho; *Tello Rivera v. Eastern Airlines, 1190 D.P.R. 83, 1987*. La Sentencia Sumaria debe dictarse en casos claros cuando el Tribunal tenga ante sí la verdad sobre los hechos pertinentes y el pleito presente solamente una cuestión de derecho; *Consejo de Titulares Parkside v. MGIC Fin. Corp., 128 D.P.R. 538 (1991)*.

(14) Los alimentos concedidos devengan intereses por mora desde el momento en que se dicte la Sentencia o desde que vence cada uno de los plazos fijados para su satisfacción, *Código Civil, Art. 674, 31 L.P.R.A. 7570*. Como consecuencia, la deuda reconocida por el demandado, por $18,000.00, ha devengado intereses a razón del interés vigente a esta fecha (8.75%), a partir de su reclamo en febrero de 2020. *Rodríguez Sanabria v. Soler, 135 D.P.R. 779*.

Cónsono con estas determinaciones de hecho, el foro primario dispuso lo siguiente:

Por tanto, se declara Con Lugar la solicitud de Sentencia Sumaria Parcial. Lo anterior se hace sin necesidad de posponer hasta la Resolución total del pleito. No obstante, los procedimientos continuarán a fin de valorizar el inmueble, determinar el monto de los cánones devengados, gastos incurridos en su mantenimiento y participación de cada comunero en el ingreso neto y en el valor del inmueble.[19]

En desacuerdo, el 15 de septiembre de 2025, el Apelante instó *Moción en Solicitud de Reconsideración.*[20] En esta, argumentó que el tribunal *a quo* había hecho referencia a la doctrina de actos propios en su dictamen, mas esta no era aplicable a la controversia. Explicó que la propiedad ya era suya previo al fallecimiento de la señora Ortiz Acosta y "no tuvo que recurrir a un acto de ingratitud para obtener el bien."[21] Detalló que ya era dueño del cincuenta por ciento (50%) de la propiedad, y la señora Ortiz Acosta le cedió el otro cincuenta por ciento (50%) mediante el acuerdo alcanzado en el proceso de divorcio.

Tras un plazo concedido para exponer su posición[22], el 30 de septiembre de 2025, la señora Rodríguez Ortiz presentó *Moción en Cumplimiento.*[23] Allí, esbozó que la doctrina de actos propios surgía por el hecho de que, el incumplimiento de la señora Ortiz Acosta con respecto a la escritura de cesión fue el resultado del delito cometido por el señor Rodríguez Berríos. En otras palabras, indicó que fue la

---

[19] *Íd.*, pág. 3.
[20] Véase, SUMAC TPI, Entrada 72.
[21] *Íd.*, pág. 4.
[22] Véase, SUMAC TPI, Entrada 73.
[23] Véase, SUMAC TPI, Entrada 75.

conducta del Apelante lo que impidió que se concretara la escritura de cesión.

De otra parte, esgrimió que el asunto de la titularidad no resultaba pertinente en el dictamen que desestimó la causa de acción contra el señor Domingo Rodríguez y la señora Victoria Berríos. Así pues, adujo que tal determinación constituía un *dictum*, por lo que no podía considerarse como una determinación vinculante.

Atendidos ambos escritos, el 1 de octubre de 2025, el foro primario emitió y notificó *Resolución Interlocutoria* en la que declaró *No Ha Lugar* la solicitud de reconsideración instada por el Apelante.[24]

Inconforme con este resultado, el 31 de octubre de 2025, el señor Rodríguez Berríos presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia al declarar Ha Lugar la Sentencia Sumaria presentada por la parte recurrida.
>
> Erró el Tribunal de Primera Instancia al determinar que el "bien inmueble [que nunca se ha descrito] pertenece en comunidad al aquí recurriente *sic* y la recurrida.
>
> Erró el Tribunal de Primera Instancia al determinar que el recurrente est[á] impedido por sus propios acots *sic* a exigir el cumplimiento del otorgamiento de la escritura de cesión cuando la muerte de la madre de la recurrida fue posterior[.]
>
> Erró el Tribunal de Primera Instancia al determinar que a la recurrida le corresponde el derecho a exigir la división de la comunidad y establecer que le corresponde el 50% de participaci[ó]n, cuando la realidad es que al momento de la muerte de la madre de la recurrida no exis[í]a una comunidad de bienes por haberse liquidado.
>
> Erró el Tribunal de Primera Instancia al establecer que la recurrida tiene derecho al 50% de los frutos.

El 5 de noviembre de 2025, este Tribunal de Apelaciones emitió *Resolución* en la cual, entre otros asuntos, le concedió al Apelante hasta el 1 de diciembre de 2025 para presentar su alegato

---

[24] Véase, SUMAC TPI, Entrada 76.

en oposición. Al próximo día, esta Curia emitió *Resolución* al amparo de la Regla 83.1 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), concediendo un término de cinco (5) días al foro primario para fundamentar la *Sentencia Parcial* emitida y notificada el 5 de septiembre de 2025.

Así pues, el 10 de noviembre de 2025, el foro primario emitió escrito denominado *Resolución* por virtud del cual fundamentó la referida determinación. En detalle, dispuso que, toda vez que el inmueble estaba gravado por una hipoteca, era necesario el consentimiento del acreedor hipotecario al momento de realizar una transacción de titularidad válida. Consecuentemente, razonó que se trataba de una obligación suspensiva, "[e]s decir, la transacción sólo será posible si el banco autoriza la novación."[25] El foro primario señaló que dicha condición suspensiva no fue cumplida por razones atribuibles al señor Rodríguez Berríos. Ante ello, razonó que esta había quedado extinta, por lo que la propiedad se mantenía en la comunidad post ganancial.

Luego, el 12 de noviembre de 2025, el Apelante presentó *Moción en Solicitud de Remedio*, en el que requirió un término de diez (10) días para suplementar su escrito. Así pues, el mismo 12 de noviembre de 2025, esta Curia emitió *Resolución* concediendo hasta el 24 de noviembre de 2025 para que se expresara.

En cumplimiento, el 24 de noviembre de 2025, el señor Rodríguez Berríos instó escrito intitulado *Alegato Parte Recurrente*. En este, el Apelante reprodujo los mismos argumentos esbozados en su recurso, e incluyó un nuevo señalamiento de error relacionado a los fundamentos esbozados por el tribunal *a quo* en su escrito del

---

[25] Véase, SUMAC TA, Entrada 7, pág. 2.

10 de noviembre de 2025. El referido señalamiento dispone como sigue:

> Erró el Tribunal de Primera Instancia al establecer que estando grabado *sic* el inmueble objeto de controversia por una hipoteca el consentimiento del acreedor es necesario para que la transacción sea válida.

Posteriormente, el 25 de noviembre de 2025, la señora Rodríguez Ortiz presentó *Alegato de la Apelada.*

Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

## II.
### *A. Sentencia Sumaria*

La sentencia sumaria es el mecanismo procesal cuyo propósito principal es facilitar la solución justa, rápida y económica de los litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio a fondo. *Negrón Castro v. Soler Bernardini*, 216 DPR ___ (2025), 2025 TSPR 96, pág. 5.Véase, además, *Soto y otros v. Sky Caterers,* 215 DPR ___ (2025), 2025 TSPR 3, pág. 10. La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, permite que, en un litigio, cualquiera de las partes le solicite al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra.* No obstante, para que una sentencia sumaria proceda, es necesario que de los documentos que la acompañan, surja de manera preponderante la inexistencia de controversia sobre los hechos medulares del caso. *Soto y otros v. Sky Caterers*, supra.

Para poder demostrar eficientemente la falta de controversia sobre hechos esenciales, el promovente de la sentencia sumaria debe: (1) exponer las alegaciones de las partes; y (2) desglosar en párrafos debidamente enumerados los hechos sobre los cuáles, a su

entender, no hay controversia. Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3.

En *Meléndez González et al. v. M. Cuebas,* 193 DPR 100 (2015), el Tribunal Supremo estableció el estándar específico que debe utilizar este Foro al revisar denegatorias o concesiones de Mociones de Sentencia Sumaria. A esos efectos, el Tribunal Supremo ha dispuesto que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018).

Es decir, planteada una revisión de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia para resolver, por lo que debe evaluar las mociones presentadas en el foro primario y cumplir con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra,* al emitir su dictamen. *Meléndez González et al. v. M. Cuebas, supra,* pág. 118. "[L]a revisión del foro apelativo conlleva examinar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor". *Birriel Colón v. Econo y otros,* 213 DPR 80, 91-92 (2023), citando a *Meléndez González et al. v. M. Cuebas, supra.*

En tal sentido, como parte de nuestra función revisora, es nuestro deber evaluar todos los documentos que obren en el expediente de manera tal que, previo a determinar la procedencia de

una solicitud de sentencia sumaria, se deba realizar un balance adecuado entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles. *BPPR v. Cable Media,* 215 DPR ___ (2025), 2025 TSPR 1*,* pág. 9 (citas omitidas). Cónsono con lo anterior, en el ejercicio de nuestra función revisora, estamos limitados a: (1) considerar los documentos que se presentaron ante el foro primario; (2) determinar si existe o no controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó correctamente. *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 994 (2024).

Por otra parte, nuestra más Alta Curia ha definido el concepto hecho material de la siguiente forma: un hecho material o esencial es "aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Consejo de Tit. v. Rocca Dev. Corp., et als.,* supra*,* 215 DPR ___ (2025), 2025 TSPR 6, pág. 15. Por ende, la parte promovente tiene el deber de exponer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. *Soto y otros v. Sky Caterers,* supra, pág. 11.

Ahora bien, el Tribunal Supremo de Puerto Rico ha determinado que "no existe impedimento alguno para que se utilice el mecanismo de sentencia sumaria en reclamaciones que requieran elementos subjetivos o de intención, cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge la inexistencia de controversia en torno a los hechos materiales." *Batista Valentín v. Sucn. de José Enrique Batista Valentín y otros,* 216 DPR __ (2025), 2025 TSPR 93, pág. 10. En vista de ello, "la Regla 36 no queda excluida como cuestión de derecho de ningún procedimiento en particular" (citas omitidas). *Íd.*

De igual forma, en nuestra jurisdicción se ha reconocido la sentencia sumaria en modalidad de insuficiencia de prueba. *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 732 (1994). Esta

modalidad opera de la siguiente manera: "después de que las partes hayan realizado un adecuado y apropiado descubrimiento de prueba, el promovente puede presentar su moción de sentencia sumaria, alegando la insuficiencia de prueba por parte del promovido". *Íd.* Asimismo, el promovente de esta solicitud tiene que poner al tribunal en posición de evaluar que el descubrimiento de prueba realizado haya sido adecuado hasta ese momento y, debe demostrar que el promovido no cuenta con evidencia suficiente. *Pérez v. El Vocero de P.R.*, 149 DPR 427, 447 (1999). Cónsono con lo anterior, la parte promovente debe demostrar que la parte promovida no cuenta con evidencia admisible suficiente para probar, al menos un elemento esencial indispensable para su caso. *Ramos Pérez v. Univisión,* 178 DPR 200, 218 (2010).

En fin, esta modalidad establece que: "(1) el juicio en su fondo es innecesario; (2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial a su reclamación, y (3) como cuestión de derecho, procede la desestimación de la reclamación". *Rodríguez Méndez v. Laser Eye,* 195 DPR 769, 786 (2016).

### B. Comunidad Post Ganancial

Como es sabido, al contraer matrimonio, los esposos determinan el régimen económico que regirá su matrimonio. *Roselló Puig v. Rodríguez Cruz,* 183 DPR 81, 92-93 (2011). De acuerdo con el Artículo 1267 del Código Civil de 1930, 31 LPRA sec. 3551 (derogado),[26] salvo que existan capitulaciones matrimoniales válidas, la sociedad de gananciales es el régimen económico supletorio que rige durante la vigencia del matrimonio. *Betancourt González v. Pastrana Santiago*, 200 DPR 169, 177-178 (2018). Bajo este régimen, los cónyuges son codueños y administradores de todo

---

[26] Se hace referencia al Código Civil derogado toda vez que el matrimonio del señor Rodríguez Berríos y la señora Ortiz Acosta quedó disuelto durante la vigencia de dicho Código.

el patrimonio matrimonial sin adscribírsele cuotas específicas a cada uno. *Íd.*, pág. 178; *SLG Báez-Casanova v. Fernández et al.*, 193 DPR 192, 196 (2015). La sociedad legal de gananciales comienza el día de la celebración del matrimonio y concluye al disolverse, ya sea por muerte, divorcio o nulidad. *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 901 (2016).

La disolución del matrimonio ocasiona *ipso facto* la extinción de la sociedad legal de gananciales, pues la causa de esta institución, la consecución de los propósitos del matrimonio se desvanece ante la rotura del vínculo civil entre los cónyuges. *Montalván v. Rodríguez*, 161 DPR 411, 420-421 (2004). Adviene entonces una comunidad de bienes compuesta por todos los bienes del haber antes ganancial, en la cual cada copartícipe posee una cuota independiente y alienable con el derecho correspondiente a intervenir en la administración de la comunidad y a pedir su división. *Correa Márquez v. Juliá Rodríguez*, 198 DPR 315, 323 (2017), citando a *Montalván v. Rodríguez*, supra, pág. 421.

Esta comunidad de bienes post ganancial o post matrimonial existe hasta que se liquida finalmente la sociedad de gananciales y puede, por lo tanto, extenderse indefinidamente, pues la acción para liquidar la cosa común nunca prescribe. Art. 1865 del Código Civil de 1930, 31 LPRA sec. 5295 (derogado). Además, se distingue por ser una comunidad ordinaria de la que sus comuneros ostentan una cuota abstracta sobre la antigua masa ganancial y no una cuota concreta sobre cada bien que la compone. *Island Holdings v. Sucn. Hernández Ramírez*, 201 DPR 1026, 1034 (2019). Durante la vigencia de la comunidad post ganancial, cada uno de los cónyuges posee una cuota independiente, alienable y homogénea, con el derecho a intervenir en la administración de los bienes comunes y a pedir su división. *Matos Rivera v. Soler Ortiz*, 213 DPR 1044, 1055 (2024); *Betancourt González v. Pastrana Santiago*, supra, pág. 179.

Por consiguiente, cualquiera de los excónyuges puede válidamente vender, ceder o traspasar sus derechos y acciones sobre la masa de la comunidad previo a su liquidación final. Sin embargo, no puede disponer por sí mismo de bienes de la comunidad, o cuotas determinadas y específicas de estos debido a que la comunidad se gobierna por el "régimen de mayorías para la gestión y de unanimidad para los actos de disposición". *Betancourt González v. Pastrana Santiago*, supra, citando a *BL Investment Inc. v. Registrador*, 181 DPR 5, 15 (2011).

### C. *Condición Suspensiva*

Nuestro ordenamiento jurídico reconoce las obligaciones puras, condicionales y a plazos. *López v. González*, 163 DPR 275, 282 (2004). Las obligaciones puras son aquellas exigibles desde el instante en que se constituye la relación obligatoria. De otro lado, las obligaciones condicionales son aquellas cuya eficacia depende de que se cumpla un hecho futuro o incierto. Mientras que, las obligaciones a plazos dejan establecida en firme la prestación sin que pueda exigirse todavía al momento de quedar constituida la relación obligatoria. *Íd.*, citando a Puig Brutau, *Fundamentos de Derecho Civil*, Editorial Bosch, Barcelona, 1985, 3ra ed. Rev., Tomo I, Vol. II, pág. 81.

En lo atinente, las obligaciones condicionales incluyen como modalidad las obligaciones sujetas a una condición suspensiva, "cuyo cumplimiento se subordinan los efectos de un acto jurídico por voluntad de los contratantes." *López v. González*, supra. En otras palabras, su eficacia dependerá del cumplimiento de un hecho futuro o incierto. El elemento característico de estas obligaciones es la incertidumbre en términos de si el vínculo jurídico adquirirá eficacia o la perderá por haberse cumplido un hecho futuro e incierto. *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 773 (2001). Si la condición se cumple, la obligación adquiere eficacia. Por el

contrario, si no se realiza, las partes quedan liberadas del cumplimiento de la obligación. *Íd.* A esos efectos, el Artículo 1070 del Código Civil de 1930, 31 LPRA sec. 3045 (derogado), dispone que "[l]a condición de que ocurra algún suceso en un tiempo determinado extinguirá la obligación desde que pasare el tiempo, o fuere ya indudable que el acontecimiento no tendrá lugar". Así pues, si la condición suspensiva no se cumple, el vínculo entre las partes se extingue y no se pueden exigir las prestaciones hasta tanto la condición se haya cumplido. *Jarra Corp. v. Axxis Corp.*, supra.

### D. Actos Propios

La doctrina de actos propios se basa en "el principio general de derecho que exige proceder de buena fe". *Domenech v. Integration Corp. et al.*, 187 DPR 595, 621 (2013). Conforme al mismo, "[a] nadie le es lícito obrar contra sus actos. Tampoco puede asumir una conducta contradictoria a una actuación previa que generó expectativas en quien confió en ese obrar". *Íd.* (Citas omitidas).

Sobre este particular, nuestro Tribunal Supremo ha señalado lo siguiente:

> Al determinar la aplicabilidad de la doctrina, hemos expresado que los presupuestos necesarios o elementos constitutivos para la aplicación de la norma jurídica de que nadie puede venir contra sus propios actos pueden resumirse así: (a) Una conducta determinada de un sujeto, (b) que haya engendrado una situación contraria a la realidad, esto es, aparente y, mediante tal apariencia, susceptible de influir en la conducta de los demás, y (c) que sea base de la confianza de otra parte que haya procedido de buena fe y que, por ello, haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada. *Alonso Piñero v. UNDARE, Inc.,* 199 DPR 32, 55–56 (2017)(Corchetes y escolios omitidos)(Énfasis suplido).

Por consiguiente, "[e]l centro de gravedad de la regla no reside en la voluntad de su autor, *sino en la confianza generada en terceros...*". *OCS v. Universal,* 187 DPR 164, 173 (2012) (Citas omitidas).

**III.**

De entrada, es menester destacar que, toda vez que el recurso de epígrafe versa sobre la revisión de un dictamen resuelto por la vía sumaria, le corresponde a este foro revisor realizar un examen de *novo*, tanto de la solicitud de sentencia sumaria y sus anejos, así como su oposición. Efectuado el análisis correspondiente, resolvemos que la Apelada cumplió esencialmente con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra*, más no así el Apelante. En su escrito en oposición, el señor Rodríguez Berríos omitió: (1) hacer referencia a los párrafos enumerados por la señora Rodríguez Ortiz, con indicación de cuáles entendía de buena fe controvertidos y cuáles no y, (2) presentar evidencia sustancial para controvertir la prueba.

Atendido lo anterior, nos corresponde revisar si existen hechos materiales en controversia que impidan la resolución sumaria de la controversia ante nos y, de haberlos, exponer concretamente cuáles hechos materiales encontró el foro primario en controversia y cuáles están incontrovertidos. Ahora bien, sabido es que, cuando una parte que se opone a una solicitud de sentencia sumaria no controvierte los hechos alegados en esta, los hechos se darán por admitidos y, de proceder, la sentencia sumaria se dictará en contra de la parte promovida. Regla 36.3 (c) y (d) de Procedimiento Civil, *supra.*

Así pues, adoptamos las determinaciones de hechos formuladas por el foro primario como hechos materiales incontrovertidos. Ante este cuadro, solo nos resta determinar si el foro primario aplicó correctamente el derecho a los hechos. Veamos.

Por estar estrechamente relacionados, discutimos en conjunto todos los señalamientos de error.

En esencia, el señor Rodríguez Berríos aduce que el foro primario incidió al concluir que el inmueble en controversia

permaneció en la comunidad post ganancial, y que se encuentra impedido de exigir el cumplimiento de la otorgación de la escritura de cesión contemplada en la estipulación de divorcio. Insiste en que había adquirido la titularidad total del inmueble previo al fallecimiento de la señora Ortiz Acosta y que todos los bienes fueron liquidados mediante la sentencia de divorcio. No le asiste la razón.

Surge del tracto reseñado que, como parte de las estipulaciones alcanzadas durante su proceso de divorcio, el señor Rodríguez Berríos y la señora Ortiz Acosta acordaron que el Apelante retendría el inmueble en controversia y continuaría pagando la hipoteca que gravaba el mismo. En específico, la estipulación establecía lo siguiente:

> La peticionaria retendrá el auto marca Hundai *sic*, modelo 1995 y continuará pagando las mensualidades. El padre peticionario retendrá la casa y el mobiliario del hogar y continuará pagando la hipoteca. La peticionaria firmará la escritura de cesión de derechos sobre la casa a favor del peticionario una vez se decrete el divorcio.[27]

Ahora bien, dicha estipulación no equivalía a una transmisión inmediata del título. Nótese que, al momento de acordar dicha estipulación, la propiedad en controversia estaba gravada por una hipoteca. De esta manera, para que la titularidad de la propiedad fuese transmitida al señor Rodríguez Berríos, era necesario que el banco acreedor aceptara la novación. Esto pues, como es sabido, no se permite la sustitución de un deudor sin que medie el consentimiento previo del acreedor. 31 LPRA sec. 3243 (derogado).

Así pues, la transmisión de la titularidad estaba condicionada al cumplimiento de una condición suspensiva. Conforme a la normativa aplicable, la eficacia de una condición suspensiva depende del cumplimiento de un hecho futuro e incierto. Véase, Jarra Corp. v. Axxis Corp., supra, pág. 773. En el presente caso, el expediente refleja que la condición suspensiva nunca se cumplió.

---

[27] *Véase*, SUMAC TPI, Entrada 1, Anejo 2, pág. 1.

Esto pues, previo a que el banco pudiera siquiera considerar la novación de la hipoteca, la señora Ortiz Acosta falleció a manos del Apelante. Además, la propia estipulación de divorcio contenía una condición suspensiva, a saber, la otorgación de una escritura de cesión por parte de la señora Ortiz Acosta. Al no cumplirse, la transmisión del título nunca se perfeccionó. Lo anterior, precisamente, activa la doctrina de actos propios, puesto que el Apelante no puede pretender beneficiarse de una situación creada por sí mismo para salvaguardar un derecho de título sobre una propiedad que no le pertenece completamente.

Así las cosas, contrario al argumento del señor Rodríguez Berríos, la comunidad post ganancial permaneció vigente tras el fallecimiento de la señora Ortiz Acosta, y la propiedad permaneció siendo parte de esta. Consecuentemente, tras la muerte de la señora Ortiz Acosta, su participación sobre el inmueble pasó a formar parte del caudal hereditario de esta.

Como es sabido, el Código Civil de 1930 disponía como herederos forzosos a los hijos y descendientes, a falta de estos a los padres y ascendientes y, en ausencia de ellos, al viudo o viuda. 31 LPRA sec. 2362 (derogado). Asimismo, el referido estatuto establecía que, los frutos de una cosa, incluyendo los civiles, "no pertenecen al simple poseedor y deben ser devueltos juntamente con la cosa al propietario de la misma que la reclama." 31 LPRA sec. 1142 (derogado).

En el caso de marras, la declaratoria de herederos que obra en el expediente dispone que la Apelada es la única y universal heredera de la señora Ortiz Acosta.[28] Además, el contrato de arrendamiento relacionado a la propiedad, presentado por la Apelada junto a su solicitud de sentencia sumaria, demuestra que

---

[28] Véase, SUMAC TPI, Entrada 65, Anejo 8.

el señor Rodríguez Berríos ha estado obteniendo frutos de dicho bien.[29] Así pues, en ausencia de otros herederos, y en vista de que el Apelante ha estado devengando frutos a través del arrendamiento de la propiedad en controversia, la señora Rodríguez Ortiz sucede plenamente la parte correspondiente a su madre, así como los frutos.

En fin, tras realizar un estudio *de novo* tanto de la solicitud de sentencia sumaria, la oposición a esta, así como de los documentos anejados, es forzoso concluir que el foro primario actuó correctamente al concluir que el inmueble pertenece a la comunidad post ganancial y que la Apelada es titular del cincuenta por ciento (50%) de este, así como del cincuenta por cierto (50%) de los frutos.

Habiendo resuelto lo anterior, conviene señalar que, como parte de su recurso, el Apelante alega que el foro primario no realizó un avalúo o inventario del inmueble, ni determinó como se liquidarían los frutos, gastos de mantenimiento o cargas sobre la propiedad. No obstante, advertimos que la determinación del tribunal *a quo* expresamente resolvió de manera parcial el asunto, y se limitó a la cuestión de titularidad. Por lo que, tal y como resolvió el tribunal *a quo,* los procedimientos continúan con el propósito de "valorizar el inmueble, determinar el monto de los cánones devengados, gastos incurridos en su mantenimiento y participación de cada comunero en el ingreso neto y en el valor del inmueble."[30]

Conforme a todo lo anterior, colegimos que los errores señalados no fueron cometidos, por lo que procede confirmar la sentencia apelada.

**IV.**

Por los fundamentos antes expuestos, **confirmamos** el dictamen apelado.

---

[29] *Íd.*, Anejo 9.
[30] Véase, SUMAC TPI, Entrada 71, pág. 3.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones